UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

ALEXANDRA MARTINEZ,

        Plaintiff,

v.

ALLEGIS GROUP, INC. d/b/a ALLEGIS GLOBAL SOLUTIONS, INC.

        Defendant.

## COMPLAINT

Plaintiff, Alexandra Martinez, by and through her attorneys, HKM Employment Attorneys, LLP, hereby files her Complaint against Allegis Group, Inc. d/b/a Allegis Global Solutions, Inc. ("Allegis" or "Defendant") and in support thereof states as follows.

### PRELIMINARY STATEMENT

1. This is an employment discrimination suit brought by a former employee of Allegis who was retaliated against for reporting workplace harassment. In retaliation for reporting the harassment, Defendant terminated Plaintiff. Accordingly, Plaintiff brings claims against the Defendant pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301 *et seq.*, and Unlawful Prohibition of Legal Activities as a Condition of Employment, C.R.S. § 24-34-402.5.

### PARTIES

2. Plaintiff is and at all times relevant to the Complaint was a resident of Colorado.

3. Allegis is a Maryland corporation with a principal office located at 7301 Parkway Drive, Hanover, Maryland, 21076.

4. Allegis is a global leader in talent solutions. Allegis provides staffing and human resources services; IT staffing and consulting; technical, professional, and industrial staffing; managerial, professional, and accredited accounting and financial staffing; and legal staffing.

5. Plaintiff was employed by Defendant as a Staffing Specialist I, supporting Defendant's client, Western Union MSP Program Office Team ("Western Union"), led by Kyle Feldman (Program Manager) and Shalini Reddy (Program Executive), from August 12, 2019 to February 6, 2020.

6. Plaintiff worked at Defendant's Denver location, located at 7001 E. Belleview Avenue, Denver, Colorado 80237.

7. Plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f).

8. Defendant is an employer within the meaning of 42 U.S.C. § 2000e(b).

9. Plaintiff is an employee within the meaning of C.R.S. § 24-34-401(2).

10. Defendant is an employer within the meaning of C.R.S. § 24-34-401(3), in that it employs persons within the state of Colorado.

**JURISDICTION AND VENUE**

11. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

12. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 and the Colorado Anti-Discrimination Act.

13.     The Court has original jurisdiction over Plaintiff's federal claim pursuant to 42 U.S.C. § 2000e-5(f)(3), U.S.C. §§ 1331, and 1343(3), (4).  This Court has jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims are so related to the federal claim that they form part of the same case or controversy.

14.     Jurisdiction is also proper under 23 U.S.C. § 1332(a)(1), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in the District of Colorado.

### ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

16.     Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

17.     Plaintiff filed Charges of Discrimination, Numbers 32A-2020-00437 and E2000008689 with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division ("CCRD"), respectively, against Defendant for retaliation under Title VII and the Colorado Anti-Discrimination Act on April 15, 2020.  Plaintiff was issued a Notice of Right to Sue with respect to the above Charge Numbers and has filed the instant action within ninety (90) days of receipt of same.

18.     Plaintiff has met all administrative prerequisites prior to filing this action.

## FACTUAL ALLEGATIONS

19. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

20. Plaintiff began working for Defendant as a Staffing Specialist I in August 2019.

21. As Staffing Specialist I, Plaintiff was responsible for running day-to-day meetings with applicants for employment, meeting with staffing agencies (including Robert Half and Integration International) at Western Union, and overseeing the employee requisition process.

22. Plaintiff was responsible for assisting client managers during the hiring process including: intake, sourcing, and candidate shortlisting and interviewing. Likewise, Plaintiff assisted with ensuring that candidates appropriately filled out new hire paperwork, logged inquiries into IQNavigator (an information management system) and confirmed that employees returned their laptops and Defendant's property when they left the employ of Defendant.

23. As Staffing Specialist I, Plaintiff reported to the Operations Manager.

24. In her role, Plaintiff was not in nor associated with a Human Resources department.

25. In her role, Plaintiff was not involved in handling or responding to reports of sexual harassment and/or discrimination.

26. Plaintiff's role was in the staffing arena – she primarily filled holes in staffing and processed hiring paperwork. However, Plaintiff had no direct or indirect role in management of employees after they were hired.

27. On January 21, 2020, Keiajeau McGill, an employee of one of Defendant's affiliates (Robert Half) reported to Plaintiff that she was being sexually harassed by another employee, Zach, based upon Ms. McGill's sex/gender (female) and/or sexual orientation (lesbian).

28. Ms. McGill told Plaintiff that while at work, Zach (last name unknown, a recruiter for Integration International) bragged to Ms. McGill about how large his genitals were.

29. Ms. McGill responded to Zach that the comments about his genitals made her extremely uncomfortable.

30. Ms. McGill told Plaintiff about the sexual harassment she had endured.

31. Plaintiff reported the harassment to Linda Schaibley (Western Union's Senior Manager, and Ms. McGill's direct supervisor), and asked Ms. Schaibley for a meeting.

32. Plaintiff then went to Kyle Feldman (Program Manager for Defendant, and Plaintiff's direct supervisor) and told Mr. Feldman about the sexual harassment Ms. McGill had endured.

33. Ms. Shaibley, Mr. Feldman, and Plaintiff met to discuss the sexual harassment.

34. During the meeting, Ms. Schaibley said: "This is bullshit.  She has said inappropriate things in the office before too.  I'm not going to let my recruiter [Zach] get in trouble for this."

35. Mr. Feldman suggested to Plaintiff that they inform the "suppliers" (i.e. Integration International, Zach's employer, and Robert Half, Ms. McGill's employer) of the harassment.

36. Ms. Shaibley responded: "We can't terminate her now because it will look like we're trying to sweep something under the rug!"

37. During the conversation – and given Ms. Shaibley's comments – it was clear to Plaintiff that Defendant, along with Ms. Shaibley, did not intend to exercise reasonable care to prevent and promptly correct the sexual harassment.

38. Plaintiff was appalled that the Defendant, and its suppliers, so clearly intended to ignore the sexual harassment. Concerned for Ms. McGill's safety at work, and for the safety of the rest of her coworkers, Plaintiff knew that she had to encourage Ms. McGill to continue to speak up and speak louder.

39. On January 22, 2020, on her drive into work – outside of her work hours and outside of her role in representing the Defendant – Plaintiff spoke with Ms. McGill, comforted her, and assured her that she would help Ms. McGill in any way that she could, including by helping Ms. McGill pursue action against the Defendant for the unlawful conduct. Likewise, Plaintiff encouraged Ms. McGill to pursue action against the Defendant. Further, she expressed to Ms. McGill concern that the companies (including Defendant) did not intend to exercise reasonable care to prevent and promptly correct the sexual harassment.

40. By contacting Ms. McGill and encouraging her to pursue action against the Defendant, Plaintiff actively assisted Ms. McGill in pursuing her Title VII rights, or otherwise engaged in activities that reasonably could be perceived as directed towards the assertion of rights protected under Title VII.

41. When Plaintiff arrived at work for Defendant on January 22, 2020, Mr. Feldman confronted Plaintiff and demanded: "What did you tell her [Ms. McGill]?"

42. Plaintiff explained to Mr. Feldman that she had indicated to Ms. McGill that the companies were working on a solution, that Plaintiff intended to assist Ms. McGill with reporting and pursuing the harassment claim in any way she could and expressed her concern that – based on Ms. Shaibley's statements – it appeared that the companies (including Defendant) did not intend to exercise reasonable care to prevent and promptly correct the sexual harassment.

43. On or about January 22, 2020, Defendant first began engaging in discussions regarding removing Plaintiff from her job assignment and/or terminating her employment.

44. On January 22, 2020, Defendant instructed Plaintiff to work from home until further notice.

45. From January 23, 2020 to February 6, 2020, Plaintiff worked remotely as she had been instructed.

46. On February 6, 2020, Defendant terminated Plaintiff.

## FIRST CLAIM FOR RELIEF
### (Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*)

47. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

48. Title VII prohibits discrimination based on sex in employment.

49. Title VII, 42 U.S.C. § 2000e-3(a) states, in relevant part: "It shall be an unlawful employment practice for an employer . . . to discriminate against any individual, . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

50. Plaintiff engaged in activity protected by Title VII. Specifically, she opposed Defendant's unlawful and discriminatory practices under Title VII by submitting verbal complaints to Defendant about Zach's harassment of Ms. McGill.

51. Plaintiff acted with a reasonable good faith belief that the conduct she opposed was unlawful or could become unlawful if repeated.

52. Plaintiff's opposition and complaints regarding Defendant's illegal practices were protected activities within the meaning of 42 U.S.C. § 2000e, *et seq.*

53. Per the EEOC's Enforcement Guidance on Retaliation and Related Issues, it is unlawful to retaliate against an employee for communicating opposition to a perceived EEO violation. This may include:

    (a) Complaining or threatening to complain about alleged discrimination against oneself or others;

    (b) Advising an employer on EEO compliance;

    (c) Resisting sexual advances or intervening to protect others;

    (d) Passive resistance; and

    (e) Talking to coworkers to gather information or evidence in support of a potential EEO claim.

54. Per the EEOC's Enforcement Guidance on Retaliation and Related Issues: "It is unlawful to take an action against employees because they have complained about discrimination that affects other people."

55. Plaintiff's conduct (1) communicated to the Defendant a belief that Defendant engaged in a form of employment discrimination; and (2) concerned subject matter that Plaintiff reasonably believed to be unlawful under Title VII.

56. Plaintiff's conduct fell outside the scope of her required job duties, as her job did not include investigating claims of sexual harassment; thus, her opposition is protected.

57. Plaintiff's conduct fell outside of the scope of her job description and job duties.

58. Plaintiff engaged in protected activity by stepping outside of her role in representing Defendant by offering to help Ms. McGill pursue next steps.

59. Plaintiff's opposition was to activity made an unlawful employment practice by Title VII.

60. Defendant unlawfully retaliated against Plaintiff in the terms and conditions of her employment and subjected Plaintiff to further harassment because she engaged in the above-described statutorily protected activities.  For example, Defendant, among other things, forced Plaintiff to work from home without the interaction with and support of her colleagues.  Ultimately, Defendant terminated Plaintiff in retaliation for her protected activity.

61. This adverse treatment would dissuade a reasonable person from engaging in protected activity.

62. A causal connection exists between Plaintiff's protected activities and Defendant's unlawful retaliation.

63. Defendant's above-described conduct was intentional.

64. Defendant's above-described conduct was done with malice or with reckless indifference to Plaintiff's federally protected rights.

65. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

## SECOND CLAIM FOR RELIEF
### (Retaliation in Violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301, *et seq.*)

66. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

67. CADA explicitly states that it is unlawful for an employer:

> To discriminate against any person because such person has opposed any practice made a discriminatory or an unfair employment practice by this part 4, because he has filed a charge with the commission, or because he has testified, assisted, or participated in any manner in an investigation, proceeding, or hearing conducted pursuant to parts 3 and 4 of this article[.]

C.R.S. § 24-34-402(1)(e)(IV).

68. Plaintiff participated in statutorily protected activity by opposing unlawful practices under CADA, including discrimination and harassment based on Ms. McGill's sexual orientation and sex/gender.

69. As a result of Plaintiff's protected opposition to discrimination and harassment, Defendant retaliated against her by subjecting her to less favorable terms and conditions of employment as described in this Complaint, including being forced to work from home – away from the camaraderie and support of her colleagues – and then termination.

70. This adverse treatment would dissuade a reasonable person from engaging in protected activity.

71. A causal connection exists between Plaintiff's protected activities and Defendant's unlawful retaliation.

72. Defendant's above-described conduct was intentional.

73. Defendant's above-described conduct was done with malice or with reckless indifference to Plaintiff's rights.

74. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and she is entitled to such general and special damages, economic damages, punitive damages, and attorneys' fees and costs as permitted by law.

**THIRD CLAIM FOR RELIEF**
**(Unlawful Prohibition of Legal Activities as a Condition of Employment, C.R.S. § 24-34-402.5)**

75. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

76. Plaintiff's conduct – in comforting Ms. Gill, encouraging her to pursue action against the Defendant, and urging her to continue speaking up – was off of the Defendant's premises, lawful activity, and done during nonworking hours.

77. Plaintiff's off premises, lawful activity, during non-working hours conduct did not relate to a bona fide requirement of her employment with Defendant nor was her conduct rationally related to her employment activities and responsibilities.

78. Plaintiff's aforesaid off premises, lawful activity, during non-working hours did not create a conflict or appearance of a conflict of interest with any responsibilities she had to Defendant.

79. Plaintiff's termination from employment by Defendant was a discriminatory or unfair employment practice.

80. As a direct and proximate result of Defendant's above-described actions, Plaintiff has suffered damages, including lost wages and benefits, and attorneys' fees and costs as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendant and order the following relief as allowed by law:

A. Compensatory damages including, but not limited to, those for past and future pecuniary and non-pecuniary losses, garden-variety emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

B. Attorneys' fees and costs of this action;

C. Pre-judgment and post-judgment interest at the highest lawful rate; and

D. Such further relief as the Court deems just and proper.

Dated this 27th day of January 2021.

Respectfully submitted,

HKM EMPLOYMENT ATTORNEYS LLP

By: /s/ Jesse K. Fishman\_\_\_\_
Claire E. Hunter
Jesse K. Fishman
730 17th Street, Suite 750
Denver, CO 80202
(720) 668-8989
chunter@hkm.com
jfishman@hkm.com
*Attorneys for Plaintiff*
*Alexandra Martinez*